## Case No. 14,511.

### UNITED STATES v. BALTIMORE & O. R. CO.

[13 Int. Rev. Rec. 117.]

Circuit Court, D. Maryland. 1871.[1]

INCOME TAX — LIABILITY OF CITY — LOAN IN AID OF RAILROAD.

[1. Where a railroad company agrees to pay the interest on bonds issued by a city for the purpose of raising funds for a loan to the company, and makes a mortgage to the city to secure performance of its agreement, the bonds so issued binding the city alone, the interest paid by the company belongs to the city, and is not subject to the 5 per cent. income tax imposed by the internal revenue act.]

[2. The income of a corporation is not liable to the 5 per cent. tax provided by the internal revenue act of 1864.]

[3. The federal government has no power to tax agencies employed by a municipal corporation in the exercise of its legitimate powers.]

[4. An advance of money by a city to aid in the construction of a railroad to that city is the exercise of a legitimate municipal power.]

At law.

John H. B. Latrobe, for defendant.
A. Stirling, Jr., U. S. Atty.

GILES, District Judge. The United States v. The Baltimore and Ohio Railroad Company. Action of assumpsit for the taxes

---

[1] [Affirmed in 17 Wall. (84 U. S.) 322.]

claimed to be due to the United States under the 122d section of the act of 1864 [13 Stat. 284], amended by the act of 1866 [14 Stat. 98]. Plea, non-assumpsit and issue. This case is tried before the court without a jury by virtue of the 4th section of the act of congress passed March 3, 1865 [13 Stat. 483]; and it is submitted upon the following statement of facts: (1) That the mayor and city council of Baltimore, having full authority from the legislature for the purpose, passed the ordinance No. 5, approved December 27, 1853, entitled "An ordinance to aid the Baltimore and Ohio Railroad Company, by a loan to the amount of five millions of dollars, to complete their road to the city of Wheeling, to fund their debts, and especially to lay a track as far as Piedmont, 218 miles distant from the city of Baltimore." [Baltimore Ordinances 1853–54, p. 9.] (2) That the said ordinance may be read in evidence on the trial in any stage of the above cause from the printed ordinances of the city aforesaid as well as the act of the legislature of Maryland confirming it. (3) That in pursuance of the provisions of said ordinances the bonds of said city therein authorized were prepared, issued and paid, and the proceeds paid as required, less the ten per cent. provided as a sinking fund by the terms of the ordinance. (4) That the said company executed the mortgage required by said ordinance. (5) That the said company paid the interest on said bonds, as provided by said ordinance, regularly until the 1st of July, 1862. (6) That after the day last aforesaid, the company in paying the interest aforesaid, according to the tenor of their obligations in that regard, deducted the internal revenue tax imposed by the act of congress relating thereto—or claimed to be imposed—the said city, by its register, always contending that the United States had no right to collect the tax, and bringing the action against the said company for the amount so retained, which suit was ultimately taken, by writ of error, to the supreme court United States on the first Monday in December, 1867. Pending said suit, the said city always insisted that the deduction aforesaid was unauthorized by law, and awaited the decision of the supreme court aforesaid. (7) That no payment of the amounts deducted as aforesaid has been made either to the said city or the United States since January, 1864. (8) It is admitted that the city, in paying its interest on the bonds aforesaid, has paid it to holders in full, without reservation or deduction on account of the internal revenue tax. (10) It is admitted that the said city has notified the said company not to pay the amount claimed in this suit, and has appeared by its counsel to contest the same. (The assessments made by the city were admitted, also the form of the bond issued by the mayor and council.) (11) It is admitted that during the time mentioned in the above statement the mayor and city council of Baltimore held

large amounts of stock in the Baltimore and Ohio Railroad Company. (12) It is also admitted that all laws and ordinances in that connection may be read from the volumes in which they are contained. And the claim is made by the United States for a tax of five per centum upon the quarterly interest of $75,-000, which was due and owing by the defendant to the city of Baltimore under the provisions and by the terms of the mortgage of the 16th of February, 1854, for eight quarterly payments—due 1st of October, 1868, 1st of January, 1st April, 1st July and 1st October, 1869, and 1st January, 1st April, and 1st July, 1870, making the whole tax claimed $30,000.

The first question to settle is the true construction of the 122d section of the internal revenue act. If this section stood alone, an argument of some force might be drawn from it that congress intended to impose a tax of five per centum upon all interest and dividends on bonds or shares, without reference to the parties to whom the same are payable. But that section does not stand alone. That the 122d section of the act of 1864 imposes no special tax upon the companies therein enumerated, but was simply a mode of collecting the income tax on income derived from interest, etc., on railroad bonds and other securities, was held by the court in the case of Jackson v. Northern Cent. R. Co. [Case No. 7,142], and which decision was affirmed by the supreme court. See 7 Wall. [74 U. S.] 269. The same construction was put on this section by the supreme court in the case of Haight v. Pittsburgh, Ft. W. & C. R. Co., 6 Wall. [73 U. S.] 17. These decisions settle the question of the construction of this section in the act of 1866, which differs from the law of 1864 only in extending its provisions to interest and dividends due to aliens.

We then look to the next question: Who are to be regarded as the parties to whom this interest belongs under the circumstances attending the contraction of the five million loan by the city to this defendant? Is it the city of Baltimore or the holders of the bonds or certificates of debt which issued and on which it borrowed the money to make the said loan to the defendant? Now the mortgage is made to the said city, and the obligation under it is to pay to the said city the interest on the loan quarterly, and the principal at the time therein mentioned. And although the mortgage refers to the bonds or certificates issued by the said city by virtue of the provisions of the ordinance of December session, 1853, it refers to them only to fix the dates of the payment of the principal and interest of the loan intended to be secured thereby. The bonds or certificates are the bonds of the city alone, and bind only it; they refer on their face to the purpose for which they are issued, but it is only in reciting the ordinance which authorized their issue. There is no privity of contract between this defendant and the holders of these bonds or certificates. They might possibly, in equity, if the city were insolvent, be subrogated to the rights of the city under said mortgage, as their money went to create the said loan. But at law they would have no rights. I thought differently when I decided the case of the city v. this defendant, but the point was not important in that case, and was not relied upon, so far as I recollect, by either party.

Having, therefore, arrived at the conclusion that to judge of the validity of the tax claimed in this suit we must regard alone the city of Baltimore and its immunities as a municipal corporation, let us first see if congress has imposed any tax upon the resources or income of this city. It will be seen on examining sections 116–118 that the tax of five per cent. is levied only on the gains, profits, and income of every person residing in the United States, or of any citizen of the United States residing abroad, and also by the 122d section, "of any person, including non-residents, whether citizens or aliens." It is true that by the 49th section of said act the provisions made for the delivery of returns, lists, statements, and valuations, etc., shall be held and taken to apply to all persons, associations, corporations, or companies liable to pay duty or tax. These six words, "liable to pay duty or tax," qualify the section. This tax on incomes seems to be levied alone on the income of persons, and not on the income of corporations, no matter what their character. This appears to me to be clear from an examination of other sections of this act. See, for instance, the language of the 103d section: "That every person, firm, company, or corporation," etc.; also similar language in sections 107–109; also the language of section 11, "any person, partnership, firm, association, or corporation," etc. Corporations are taxed by a tax of two and a half per cent. on their gross receipts; and as their profits and income would be divided between persons, their stockholders, congress was content to impose the tax upon the dividend or interest when set apart to such, and to provide by sections 120–122 a safe mode of collecting the same.

I might, therefore, rest this case here; but as the further question has been ably argued by the learned counsel engaged in this trial, and is presented by the second prayer of the defendant, I shall now examine it. That is, has the general government the authority to tax the income and resources of the city of Baltimore? The constitution of the United States says: "The congress shall have power to collect taxes, duties, imports and excises, to pay the debts and provide for the common defence and general welfare of the United States." But while this grant in the constitution is so broad, it must be admitted that there are some subjects withdrawn from its operation by the very character of our

government. As the supreme court in the case of Veazie Bank v. Fenno, 8 Wall. [75 U. S.] 547, says: "It may be admitted that the reserved rights of the states, such as the right to pass laws, to give effect to laws through executive action, to administer justice through the courts, and to employ all necessary agencies for legitimate purposes of state government are not proper subjects of the taxing power of congress." And the city of Baltimore. a municipal corporation, in the exercise of its legitimate powers, possesses the same immunity which belongs to the state. "For," says the supreme court, in the case of State v. Baltimore & O. R. Co., 3 How. [44 U. S.] 550, "the several counties are nothing more than certain portions of territory into which the state is divided for the more convenient exercise of the powers of government. They form together one political body, in which the sovereignty resides." In the case of Bank of Commerce v. New York City, 2 Black [67 U. S.] 634, Judge Nelson, towards the close of his able opinion, says: "In our complex system of government it is sometimes difficult to fix the true boundary between the two systems, state and federal." The chief justice, in McCulloh v. Maryland [4 Wheat. (17 U. S. ) 316], endeavored to fix this boundary upon the subject of taxation. He observed: "If we measure the power of taxation residing in the state by the extent of sovereignty which the people of a single state possess, and can confer on its government, we have an intelligible standard applicable to every case to which the power may be applied.. We have a principle which leaves the power of taxing the people and property unimpaired. which leaves to a state a command of all its resources, and which places beyond its reach all those powers which are conferred by the people of the United States on the government of the Union, and all those means which are given for the purpose of carrying those powers into execution. We have a principle which is safe for the state and safe for the Union." He remarks again: "Each is sovereign and independent in its sphere of action, and exempt from the interference or control of the other, either in the means employed or functions exercised."

With this rule so clearly enunciated by this great judge, we have only to ascertain if the advance of money by the city to aid in the construction of a railroad to bring trade and commerce to its borders from the once distant West was the exercise of a legitimate power by this municipal corporation. The act of the legislature of this state, passed March 1, 1854, undertook to impart this power to the city. Was it a power which the state possessed, and which it could impart to its creature—the corporation of Baltimore? It is a power which has too long and too often been exercised in this country to be now called in question, and it has been recognized and sanctioned by the supreme court in two cases,—Gelpecke v. City of Dubuque, 1 Wall. [68 U. S.] 202; and Rogers v. City of Burlington, 3 Wall. [70 U. S.] 664. The court says in the last case "that a railroad is nothing more than an improved highway, and that it is as competent for the legislature to authorize a municipal corporation to furnish material aid in the construction of a railroad. connected with the same as to construct a highway."

This settles the. question, and removes beyond the power of.. federal taxation the means employed by the city to carry this object into effect. The debt and interest, therefore, which this defendant owes the city under the said mortgage cannot be taxed by the general government. But this does not remove the interest which the city pays to individuals on the bonds issued under the provisions of the above-mentioned ordinance from taxation as income in the hands of the several holders. The city not being compelled or authorized to withhold the tax from the accruing interest, the holders of said bonds were required by the 117th section of the internal revenue act to include the same in their several returns of income, and by the 116th section to pay a tax of five per cent. on the same. There is no evidence in the case whether the said tax was so paid, but I have every reason to believe that it was, as the obligation to pay it was so clear. To permit it to be recovered now in this suit would be to enforce. the payment of a double tax. which would be most unjust, and a result never intended by congress. I therefore reject the prayer offered by the counsel for plaintiff, and grant the first and second prayers offered by counsel for the defendant. I have not carefully considered the proposition of the defendant's third prayer. as it did not become necessary in the view I took of the case; but I am inclined to the opinion that there is no such limitation in the government as it seeks to maintain, and I therefore reject it.

[The cause was carried to the supreme court by writ of error, and the judgment above was affirmed. 17 Wall. (84 U. S.) 322.]